1

```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEBRASKA
 2

 3   UNITED STATES OF AMERICA,      )    Case No. 4:16CR3141
                                    )
 4              Plaintiff,          )
                                    )
 5   vs.                            )
                                    )
 6   KENNETH J. JACOBSEN,           )
                                    )    Lincoln, Nebraska
 7              Defendant.          )    November 7, 2017

 8

 9

10                TRANSCRIPT OF PLEA PROCEEDINGS
              BEFORE THE HONORABLE CHERYL R. ZWART
11                UNITED STATES MAGISTRATE JUDGE

12

13                    A-P-P-E-A-R-A-N-C-E-S

14   FOR THE PLAINTIFF:        Mr. Steven A. Russell
                               Assistant United States Attorney
15                             100 Centennial Mall North
                               Suite 487, Federal Building
16                             Lincoln, NE 68508-3865

17

     FOR THE DEFENDANT:        Mr. John C. Vanderslice
18                             Assistant Federal Public Defender
                               100 Centennial Mall North
19                             112 Federal Building
                               Lincoln, NE 68508
20

21   TRANSCRIBER:             Ms. Rogene S. Schroder, RDR, CRR
                               111 South 18th Plaza
22                             Suite 3129
                               Omaha, NE 68102
23                             (402) 661-7383

24

     Proceedings recorded by electronic sound recording, transcript
25   produced with computer.
```

```
1              (At 11:07 a.m. on November 7, 2017; with counsel and the
2       defendant present:)
3                   COURTROOM DEPUTY:  We're on the record.
4                   THE COURT:  We're on the record in Case Number
5       4:16CR3141, United States of America versus Kenneth Jacobsen.
6           Counsel, please enter your appearance.
7                   MR. RUSSELL:  Your Honor, please enter the appearance
8       of Steven Russell on behalf of the United States.
9                   MR. VANDERSLICE:  And John Vanderslice on behalf of
10      Mr. Jacobsen.
11                  THE COURT:  Mr. Jacobsen, you are here today because
12      I've been told that you want to enter a plea of guilty.  Is
13      that true?
14                  THE DEFENDANT:  Yes, it is, Judge.
15                  THE COURT:  I need to explain to you that I am not
16      your sentencing judge.  I'm not the judge who's going to
17      determine whether this guilty plea is accepted and whether your
18      plea agreement is accepted.
19          Those matters will be taken up by Judge Gerrard, who is
20      your sentencing judge, but what I can do for you today is
21      gather some information from you and make a recommendation to
22      Judge Gerrard on those issues.
23          Do you agree to proceed before me?
24                  THE DEFENDANT:  Yes.
25                  THE COURT:  Please raise your right hand.
```

1      (Defendant sworn.)

2          THE COURT:  You're now under oath; you're sworn to

3  tell the truth which means if you lie during this proceeding,

4  you can be separately prosecuted for the crime of perjury.

5      Do you understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  At this time I'm going to have

8  Mr. Russell describe for you the charge to which you intend to

9  plead guilty and the possible penalty for that charge.

10      Mr. Russell.

11          MR. RUSSELL:  Mr. Jacobsen, it's proposed that you

12  plead guilty to Counts I and IV of the indictment -- excuse me,

13  let me be sure -- of the indictment.

14      Count I charges a violation of Title 18, United States

15  Code, Section 2251(a) which is production of child pornography.

16  If you're found guilty of that charge, the maximum possible

17  penalty is up to 30 years in prison with a mandatory minimum

18  term of imprisonment of 15 years, a maximum fine of $250,000,

19  or both such fine and imprisonment, a term of supervised

20  release of up to life with a mandatory minimum of five years of

21  supervised release and a $100 special assessment.

22      I will indicate to you that there is also a further

23  special assessment of $5,000 for conviction of a crime

24  involving sexual exploitation of a minor if you are found not

25  to be indigent.

1    Count IV charges a violation of Title 18, United States

2    Code, Section 2252A(a)(2) which is receipt and distribution of

3    child pornography.  If you're found guilty of that charge, the

4    maximum penalty's up to 20 years in prison with a mandatory

5    minimum of five years in prison, a maximum fine of $250,000, or

6    both such fine and imprisonment, a term of supervised release

7    of up to life with a mandatory minimum of five years of

8    supervised release, and a special assessment of $100 with a

9    further special assessment of $5,000 for a conviction of a

10    crime involving the sexual exploitation of a minor.

11        Sir, do you understand the nature of the crimes charged in

12    Counts I and IV and the maximum possible penalties?

13            THE DEFENDANT:  Yes, I do.

14            THE COURT:  Having heard the crimes charged and the

15    possible penalty, is it still your intent to plead guilty?

16            THE DEFENDANT:  Yes, it is.

17            THE COURT:  I have in front of me a Petition to Enter

18    a Plea of Guilty and a plea agreement.

19        Do you have those documents in front of you?

20            THE DEFENDANT:  I do.

21            THE COURT:  It appears that you signed them on

22    November 6th; is that correct?

23            THE DEFENDANT:  Yes, it is.

24            THE COURT:  When you went over these documents, was

25    your attorney with you?

```
1              THE DEFENDANT:  Yes.
2              THE COURT:  Going to the petition, the document with
3     all the questions and answers in it, did you read the
4     questions?
5              THE DEFENDANT:  Yes.
6              THE COURT:  Did your attorney explain the questions
7     to you?
8              THE DEFENDANT:  Yes.
9              THE COURT:  Did you answer the questions aloud?
10             THE DEFENDANT:  Yes, I did.
11             THE COURT:  Were the answers you stated out loud the
12    truth?
13             THE DEFENDANT:  Yes.
14             THE COURT:  Did your attorney write down your
15    answers?
16             THE DEFENDANT:  Yes.
17             THE COURT:  Did he write those down correctly?
18             THE DEFENDANT:  Yes.
19             THE COURT:  And after going through the petition, did
20    you sign it?
21             THE DEFENDANT:  Yes.
22             THE COURT:  Going to the plea agreement, did you read
23    the plea agreement?
24             THE DEFENDANT:  Yes.
25             THE COURT:  Did your attorney explain the plea
```

1    agreement to you?

2              THE DEFENDANT:  Yes, he did.

3              THE COURT:  Were there any questions about the plea

4    agreement that he was unable to answer?

5              THE DEFENDANT:  No.

6              THE COURT:  And after going through the plea

7    agreement, did you sign it?

8              THE DEFENDANT:  Yes.

9              THE COURT:  On November 6th when you went over these

10   documents, were you under the influence of drugs or alcohol or

11   anything that would impair your thinking?

12             THE DEFENDANT:  No, I was not.

13             THE COURT:  Are you under the influence of anything

14   right now?

15             THE DEFENDANT:  No.

16             THE COURT:  Has anybody threatened you in any way to

17   get you to plead guilty?

18             THE DEFENDANT:  No.

19             THE COURT:  Has anybody promised you anything other

20   than the promises in the plea agreement itself to get you to

21   plead guilty?

22             THE DEFENDANT:  No.

23             THE COURT:  Do you understand, sir, that if the Court

24   accepts your plea of guilty, you will be found guilty of two

25   felonies?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that you have the right

3     to plead not guilty and make the government try to prove this

4     case at trial?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that you are giving up

7     your trial rights by pleading guilty?

8          THE DEFENDANT:  Yes.

9          THE COURT:  You've been represented in this case by

10    Mr. Vanderslice; is that right?

11         THE DEFENDANT:  Yes, it is.

12         THE COURT:  Do you believe that he's investigated

13    this case sufficiently so that you know what to do today?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Are you satisfied with his

16    representation?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you understand that if you chose to go

19    to trial, you would have the right to counsel representation at

20    the trial at no cost to you?

21         THE DEFENDANT:  Yes.

22         THE COURT:  As that applies to you, Mr. Vanderslice

23    would be with you at that trial, he would represent your

24    interests and he would never send you a bill for that service.

25         Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that if you chose to go

3    to trial, you would have a jury trial?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand that at that trial you

6    would have the right to see and hear the witnesses who testify

7    against you and to have them cross-examined on your behalf?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand you would have the

10   right to call witnesses for you and if they would not come

11   voluntarily, you could get a court order called a subpoena to

12   make them come to the trial?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you understand that at the trial you

15   could testify yourself, if you wanted to, or you could exercise

16   your right to remain silent?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you understand that if you remained

19   silent at the trial, the jury would not be allowed to consider

20   that silence in deciding whether you are guilty?

21         THE DEFENDANT:  Yes.

22         THE COURT:  And finally, sir, do you understand that

23   if you chose to go to trial, the government would not get a

24   conviction against you unless it was able to prove to every

25   single juror that you are guilty beyond a reasonable doubt?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you willing to give up all of those

3    trial rights, including your right to counsel representation at

4    a trial, and plead guilty in this case instead?

5          THE DEFENDANT:  Yes, I am.

6          THE COURT:  With a guilty plea, you will have a

7    felony record and with that felony record comes the loss of

8    civil rights.  Those rights include the right to vote, the

9    right to serve on a jury, the right to hold a public office,

10   the right to carry a weapon.  You can also lose federal

11   benefits for a period of time but you will lose rights.

12       Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Knowing that you will lose civil rights,

15   are you willing to plead guilty?

16          THE DEFENDANT:  Yes, I am.

17          THE COURT:  Finally, there are community consequences

18   that come with having a felony record and in the case such as

19   this in particular, those include the difficulty with housing,

20   the difficulty with employment and the requirement that you

21   register as a sex offender.

22       Do you understand that?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Knowing that those consequences exist and

25   that the court can do little to help you with them, are you

1    willing to plead guilty?

2            THE DEFENDANT:  Yes.

3            THE COURT:  As to Count I, the production claim,

4    you're looking at a term of imprisonment of a minimum of 15

5    years and up to 30 years, a fine of up to $250,000 could be

6    imposed in addition to any term of imprisonment, supervised

7    release of a minimum of five years and up to a lifetime and a

8    $100 mandatory special assessment.

9        Is that your understanding of what you're facing under the

10   statutes as to Count I?

11           THE DEFENDANT:  Yes, it is.

12           THE COURT:  As to Count IV, under the statutes you

13   are looking at a term of imprisonment of a minimum of five

14   years and up to 20 years in prison, a possible fine of up to

15   $250,000 could be imposed in addition to any term of

16   imprisonment, supervised release of a minimum of five years and

17   up to a lifetime and another $100 special assessment.

18       Is that your understanding of what you're facing under the

19   statutes as to Count IV?

20           THE DEFENDANT:  Yes -- yes, it is.

21           THE COURT:  In addition, you are facing under the

22   charges that are in front of you another special assessment,

23   unless you are able to show that you are indigent, of $5,000.

24       Do you understand that?

25           THE DEFENDANT:  Yes.

```
 1          THE COURT:  Now, you have what is referred to as an

 2   11(c)(1)(C) plea agreement.  What that means, it's reciting a

 3   particular rule number, but what it really means is that you

 4   and the government have come to some agreements regarding what

 5   your sentence ought to be in this case; is that correct?

 6          THE DEFENDANT:  Yes, it is.

 7          THE COURT:  What I'm going to talk to you about right

 8   now is what Judge Gerrard is going to consider and think about

 9   before he decides whether to accept that.

10       First of all, have you talked to your attorney about the

11   sentencing guidelines in this case?

12          THE DEFENDANT:  Yes, I have.

13          THE COURT:  Has he explained to you that those

14   guidelines provide the starting point that Judge Gerrard will

15   look at in determining what your sentence ought to be?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that Judge Gerrard will

18   consider all of your relevant conduct in determining your

19   sentence?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  For example, he's going to consider such

22   things as how much -- how many images were involved, your

23   active involvement in producing those images, how old the

24   children were in the images, any criminal history you may have,

25   those types of things.
```

1    Do you understand that?

2         THE DEFENDANT:  Yes, I do.

3         THE COURT:  And once Judge Gerrard considers all of

4    that relevant conduct and makes his findings, that's when he

5    will decide whether he will accept or reject the agreement that

6    you have reached with the government in this case.

7    Do you understand that?

8         THE DEFENDANT:  Yes, I do.

9         THE COURT:  Now, that -- under that agreement you

10   would go to prison for a minimum of 20 years -- or 25 years but

11   not more than 35 years; is that correct?

12        THE DEFENDANT:  Yes, it is.

13        THE COURT:  All right.  If Judge Gerrard determines

14   that that is the correct sentence in this case, do you

15   understand that he will impose that sentence, and you will be

16   required to serve all of that time, and the most you can get

17   off of the time is 54 days per year for good time served if

18   you're able to earn good time?

19   Do you understand that?

20        THE DEFENDANT:  Yes, I do.

21        THE COURT:  If Judge Gerrard considers all of your

22   relevant conduct and determines that a sentence between 25 and

23   35 years is not the appropriate sentence in this case, do you

24   understand that you will be allowed to withdraw your plea of

25   guilty at that point and decide whether you want to renegotiate

1    a plea with the government or whether you want to go to trial?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  All right.  Now, let's assume that Judge

4    Gerrard does consider a sentence between 25 and 35 years is

5    appropriate.  After you have served your time in prison, you

6    will be placed on supervised release for a minimum of five

7    years and perhaps for the rest of your life.

8        I want to make sure you understand what that means.  As

9    part of your sentencing order in this case, Judge Gerrard is

10   going to consider a list of rules that you have to follow for a

11   minimum of five years after you get out of prison.  Those are

12   called conditions of release.

13       Do you understand that?

14             THE DEFENDANT:  Yes, I do.

15             THE COURT:  Do you understand that if you violate

16   those conditions of release, you can be brought back to court

17   and sent back to jail?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And do you understand that if you violate

20   the conditions of release by committing another crime and are

21   found guilty of that separate crime, your penalty or sentence

22   on that crime could be greater than it otherwise would have

23   been merely because you were still serving the sentence in this

24   case when you committed another crime?

25       Do you understand that?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  You will be required to pay a mandatory

3    special assessment of $100 per count for a total of $200.

4       Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And then as to the special assessment of

7    $5,000, there is in crimes such as this a special assessment

8    that is imposed of $5,000 that goes to a common fund for the

9    benefit of victims of this type of crime.

10       At the time of sentencing, Judge Gerrard will impose that

11   $5,000 special assessment unless he determines that you are

12   indigent or unable to pay it.

13       Do you understand that?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  In cases such as this, restitution is

16   something that Judge Gerrard will consider so I want to make

17   sure that you understand what that means.

18       When you cause harm to other people through your criminal

19   conduct, you can be required to pay for that harm as part of

20   your sentence.  That is called restitution.

21       Do you understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  So at the time of your sentencing, the

24   government may place evidence before Judge Gerrard of the

25   specific harm that you caused by your criminal conduct, and

1    once Judge Gerrard considers that evidence, he may impose an

2    order as part of your sentence that you pay a sum of money to

3    pay for that harm.

4        Do you understand?

5            THE DEFENDANT:  Yes, I do.

6            THE COURT:  All right.  Now, we have talked about

7    your plea agreement to some degree, but you do have a plea

8    agreement with the government which outlines your agreement

9    regarding what should happen at the time of sentencing.

10        As I stated before, and I'm going to repeat now, this

11   agreement is between you and the government, it is not

12   necessarily binding on Judge Gerrard.

13        Do you understand?

14            THE DEFENDANT:  Yes.

15            THE COURT:  With that in mind, I'm going to have

16   Mr. Russell explain that plea agreement to you.  I want you to

17   listen to what he says because I'm going to ask you questions

18   about that.

19        Mr. Russell.

20            MR. RUSSELL:  Your Honor, the plea agreement in this

21   matter is that the defendant would plead guilty to Counts I and

22   IV of the indictment.

23        In exchange, the United States would move to dismiss

24   Counts II, III and V of the indictment at the time of

25   sentencing.

1        The elements of the offenses charged, the factual

2    basis and the penalties are set forth in the plea agreement

3    in addition to the fact that the agreement is limited to

4    the United States Attorney's Office for the District of

5    Nebraska and this agreement cannot bind any other federal,

6    state or local prosecuting, administrative or regulatory

7    authority.

8        There is a -- as the Court has already indicated, there

9    is -- this is an 11(c)(1)(C) agreement.  The parties have

10   agreed that the defendant should receive a term of imprisonment

11   of a minimum of 300 months in jail and a -- or a maximum up to

12   420 months in jail.

13       The exact term of imprisonment within this range, all

14   other sentencing factors, including but not limited to the

15   length and term of supervised release and restitution, is left

16   to the discretion of the sentencing court.

17       The defendant does acknowledge that restitution will be

18   ordered not only for the charged conduct but for any uncharged

19   criminal conduct that the defendant engaged in as part of this

20   course of conviction and that restitution pertains to any minor

21   victim of the defendant's criminal activity.

22       The defendant does -- there is a waiver of appeal and

23   collateral attack provision in the plea agreement which limits

24   the defendant's ability to raise those issues at the time of --

25   either on direct appeal or in collateral attack.

1          The defendant does agree to withdraw his right to a plea

2     of -- no, I'm sorry, let me try that again.

3          The defendant does waive his right to withdraw his plea of

4     guilty pursuant to Rule 11(d) of the Federal Rules of Criminal

5     Procedure.

6          The defendant may only withdraw his plea of guilty in the

7     event the Court rejects the plea agreement as the Court has

8     already indicated to the defendant.

9          Your Honor, I believe those are the main points in the

10    plea agreement.

11             THE COURT:  Mr. Vanderslice, does that fairly

12    summarize the plea agreement?

13             MR. VANDERSLICE:  It -- it does, Judge, but I would

14    like to add that there are related state charges against

15    Mr. Jacobsen.  He's been actually locked up in the Lancaster

16    County jail since about the beginning of this case.

17         Mr. Chris Turner, who's the Deputy Lancaster County

18    Attorney, is present in court today.  And even though this is

19    not a binding part of the plea agreement on this federal case,

20    it's my understanding that Mr. Turner has agreed and the

21    Lancaster County Attorney's Office has agreed to dismiss their

22    case when Mr. Jacobsen is sentenced on this federal case, and I

23    presume a dismissal with prejudice because this case I think

24    is -- is related to the -- the state charges.

25         So that's not part of the plea agreement, but that was

1    part of the inducement that Mr. Jacobsen and I went through in

2    him arriving at the decision to accept this federal deal.

3              THE COURT:  All right.  Mr. Jacobsen, did you listen

4    as the attorneys described the agreement?

5              THE DEFENDANT:  Yes, I did.

6              THE COURT:  Does Mr. Russell's description match your

7    understanding of your agreement with the government?

8              THE DEFENDANT:  Yes.

9              THE COURT:  As we've already discussed, you agreed

10   under the terms of this plea agreement and subject to Judge

11   Gerrard's approval that you will be sentenced for a minimum of

12   25 years but not more than 35 years.

13       Did you agree to that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.  You also have a waiver of

16   appeal and collateral attack.  I need to make sure you know

17   what you're giving up here.

18       Everything that's done by this court is subject to being

19   looked at by another court to make sure that it was done right.

20   That process is called an appeal and the court that looks at it

21   is the Eighth Circuit Court of Appeals.

22       Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand that under the terms of

25   this plea agreement, you're giving up your right to that appeal

```
1    process unless you are claiming that Mr. Vanderslice provided

2    you with ineffective assistance of counsel?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Collateral attack is different than an

5    appeal.  With a collateral attack, you can challenge your

6    conviction and your sentence by claiming your constitutional

7    rights were violated.

8        Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that under the terms of

11   this plea agreement, you're giving up your right to that type

12   of process as well unless you are claiming that what you're

13   admitting to here today is not a crime or you are claiming that

14   Mr. Vanderslice provided you with ineffective assistance of

15   counsel?

16       Do you understand that?

17             THE DEFENDANT:  Yes, I do.

18             THE COURT:  Do you understand that your waiver of

19   appeal and your waiver of collateral attack applies both to

20   your conviction and to the sentence you've not yet received?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Have you talked to your attorney about

23   your appeal rights and your collateral attack rights?

24             THE DEFENDANT:  Yes, I have.

25             THE COURT:  Having had those discussions and having
```

1    considered your options, have you decided to give up your right

2    to appeal and your right to collateral attack with the

3    exceptions listed in the plea agreement?

4              THE DEFENDANT:  Yes, I have.

5              THE COURT:  Has anybody made any promises to you that

6    are not in this plea agreement?

7              THE DEFENDANT:  No.

8              THE COURT:  Do you understand that whether you plead

9    guilty or whether you're found guilty at trial, you could get

10   the same sentence?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Putting it another way, do you understand

13   there is no guarantee your sentence will be less because you

14   pled guilty?

15             THE DEFENDANT:  Yes.

16             THE COURT:  At this time then, I'm going to have

17   Mr. Russell describe the basic facts that provide the elements

18   of the case.  I want you to listen as he does that.  I will ask

19   you questions about what he says.

20        I will for the record state that there does appear to be a

21   very long description of the factual basis.

22        Let me ask you something, sir, have you read this factual

23   basis in the plea agreement?

24             THE DEFENDANT:  I did.

25             THE COURT:  Is all of this information in the plea

1    agreement true?

2              THE DEFENDANT:  It is.

3              THE COURT:  All right.

4              MR. VANDERSLICE:  With one -- one caveat.  As far as

5    the number of images that's stated, at the very -- well, close

6    to the bottom of page 4, it says 1918 images and 125 videos.

7    We think many of those images and videos are duplicates --

8              THE COURT:  Okay.

9              MR. VANDERSLICE:  -- and so I just wanted to add

10   that, and -- and Mr. Russell and I can haggle about that come

11   sentencing day.

12             THE COURT:  Okay.  With that -- with that

13   understanding, are the facts in here correct?

14             THE DEFENDANT:  Yes, it is.

15             THE COURT:  All right.  Mr. Russell, please provide

16   me with the facts that provide the elements of the case at this

17   point.

18        And, sir, please listen as he does that.

19             MR. RUSSELL:  Your Honor, the essence of the facts

20   are that beginning in December of 2016, Homeland Security in

21   Omaha received information that led them to believe that the

22   defendant was producing and then distributing child

23   pornography.

24        On December 9th of 2016, investigators from the Lincoln

25   Police Department and Homeland Security executed a search

1    warrant on the defendant of the residence -- on the residence

2    of the defendant.

3         The defendant was interviewed at that time by law

4    enforcement and admitting to taking -- admitted to taking

5    sexually explicit digital videos and images of minor children,

6    including prepubescent minors, and posting these pictures

7    through emails in Internet-based web services.

8         He also admitted to possessing images of child

9    pornography.

10        With respect to Count I of the indictment, one such

11   child pornography video was taken by the defendant on

12   February 8th of 2014 in Lincoln, Nebraska, and depicted a

13   female victim engaged in sexually explicit conduct as defined

14   by federal law.

15        The defendant used an iPhone manufactured outside the

16   state of Nebraska and the United States to produce the video.

17   Images of the video were produced by the defendant and

18   transmitted via the Internet to other individuals.

19        A forensic examination of the computers, equipment and

20   storage media found at the defendant's residence at the time of

21   the search warrant uncovered -- and for the sake of --

22   uncovered over 10,000 images of -- of sexually explicit conduct

23   and over 1,000 videos of sexually explicit conduct, including

24   images of prepubescent minors engaged in sexually explicit

25   conduct.

1       Investigation determined that the defendant used the

2   Internet, a means and facility of interstate and foreign

3   commerce, to receive and distribute the images of child

4   pornography.

5       The evidence would also show that the receipt of these

6   images of child pornography occurred between on or about

7   January 1st of 2014 and continuing through on or about

8   December 9th of 2016.

9       In addition to the number previously discussed, of that

10  number, again, a number of images, over 1,000 images and over

11  100 videos, appear to have been produced by the defendant.  Of

12  the images produced by the defendant, 11 victims have been

13  identified for the -- from the investigation and are agreed to

14  by the parties for restitution and sentencing guideline

15  purposes.

16          THE COURT:  Mr. Vanderslice, do you agree if this

17  case went to trial, that evidence would go before a jury?

18          MR. VANDERSLICE:  Yes, essentially so, Judge.

19          THE COURT:  All right.  Mr. Jacobsen, did you listen

20  as Mr. Russell described the evidence against you?

21          THE DEFENDANT:  Yes, I did.

22          THE COURT:  Is what he said the truth?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Just one moment.

25      On February 8th of 2014, were you here in Nebraska?

1           THE DEFENDANT:  Yes, I was.

2           THE COURT:  While in Nebraska were you engaged in

3    inducing and persuading children, minors, to engage in sexually

4    explicit conduct for the purpose of making visual depictions of

5    them doing so?

6           MR. RUSSELL:  Your Honor, maybe I can help on that

7    before the defendant makes a statement.  It appears from the

8    videos that what occurred is that the defendant would film

9    minors when they were either asleep or not in a position --

10   basically, they appear to be asleep.

11       He would then commit sexually explicit conduct on the

12   minor.  With respect to the February 8th video, he committed

13   sexually explicit conduct on the minor as defined by federal

14   law.

15       So inducing and enticing, he -- he manipulated the minor

16   to engage in sexually explicit conduct.

17          THE COURT:  Is that true, sir?

18          MR. VANDERSLICE:  And, Judge, if you look at the --

19   if I may just add, if you look at the material elements, it's

20   that the -- the defendant knowingly -- you could -- one of the

21   words in there -- and there's several words --

22          THE COURT:  Yeah, there's a whole bunch of words.

23          MR. VANDERSLICE:  -- in the list that are --

24          THE COURT:  Which one do you want me to grab?

25          MR. VANDERSLICE:  Used.

```
 1                    THE COURT:  Used?

 2                    MR. VANDERSLICE:  Used, yes.

 3                    THE COURT:  Okay.  Did you use a minor to make

 4      sexually explicit videos?

 5                    THE DEFENDANT:  Yes, I did that.

 6                    THE COURT:  And did you use a minor to take pictures

 7      of children engaged in sexually explicit conduct?

 8                    THE DEFENDANT:  Yes, I did.

 9                    THE COURT:  Okay.  Did you know that this was a child

10      you were dealing with?

11                    THE DEFENDANT:  Yes.

12                    THE COURT:  Once you took those videos and those

13      pictures, did you distribute them using the Internet?

14                    THE DEFENDANT:  Yes.  Not -- not those.  There were

15      others, though, I did.

16                    THE COURT:  Okay.  So you placed some of the videos

17      that you created and the photographs that you created on the

18      Internet?

19                    THE DEFENDANT:  Pictures only.

20                    THE COURT:  Okay.

21                    THE DEFENDANT:  No videos.

22                    THE COURT:  Okay.  And these were pictures of

23      children inva- -- engaged in sexually explicit conduct?

24                    THE DEFENDANT:  Yes, regrettably.

25                    THE COURT:  Do you agree that the Internet is a means
```

1    of transmitting information across state lines?

2         THE DEFENDANT:  I do.

3         THE COURT:  What did you use to take these pictures?

4         THE DEFENDANT:  It was my phone.

5         THE COURT:  Do you agree that the iPhone is a device

6    that was manufactured outside of the state of Nebraska?

7         THE DEFENDANT:  I do.

8         THE COURT:  And did you do this conduct of taking

9    these pictures and these videos with your iPhone and placing

10   the pictures on the Internet in the District of Nebraska?

11        THE DEFENDANT:  I was here, yes.

12        THE COURT:  All right.  I'm just going to -- before I

13   go to Count IV, have I covered the elements of Count I?

14        MR. VANDERSLICE:  I think you have, Judge.

15        MR. RUSSELL:  Yes, Your Honor.

16        THE COURT:  All right.  Thank you.  Now I'm going to

17   go to Count IV.

18      Count IV alleges that between January 1st of 2014 and

19   continuing until December 9th of 2016 that you were in

20   Nebraska.  Is that true?

21        THE DEFENDANT:  That is true, Judge.

22        THE COURT:  While in Nebraska did you knowingly

23   receive, distribute and attempt to receive and distribute child

24   pornography?

25        THE DEFENDANT:  Yes, uh-huh.

1          THE COURT:  Was the child pornography received by you

2    via your computer?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you agree that it was shipped across

5    state lines by using the Internet?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And were the child pornography images

8    that you were receiving images of children engaged in sexually

9    explicit conduct?

10         THE DEFENDANT:  Yes, there was.

11         THE COURT:  Any additional questions as to Count IV?

12         MR. RUSSELL:  I don't believe so, Your Honor.

13         MR. VANDERSLICE:  No, Judge.

14         THE COURT:  Mr. Russell, do you believe the guilty

15   plea is knowing, intelligent and voluntary and that there is a

16   factual basis for it?

17         MR. RUSSELL:  I do, Your Honor.

18         THE COURT:  And, Mr. Vanderslice, do you agree?

19         MR. VANDERSLICE:  I agree.

20         THE COURT:  Mr. Jacobsen, do you want this court to

21   accept your plea of guilty?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you have any questions of me before I

24   proceed?

25         THE DEFENDANT:  No, I don't.  Thank you.

```
1              THE COURT:  To Count I of the indictment, which
2    alleges that on or about February 8th of 2014, while in the
3    District of Nebraska, you did knowingly use a minor to engage
4    in sexually explicit conduct for the purpose of producing video
5    depictions of that conduct and that you did so and shipped or
6    placed those images in interstate commerce using the Internet
7    and your computer, what do you plead?
8              THE DEFENDANT:  I plead guilty.
9              THE COURT:  As to Count IV of the indictment, which
10   is -- alleges that between January 1st of 2014 and continuing
11   until December 9th of 2016, while in the District of Nebraska,
12   you did knowingly receive and distribute and attempt to receive
13   and distribute child pornography by using the -- interstate
14   commerce, in other words, the Internet and a computer, what do
15   you plead?
16             THE DEFENDANT:  I plead guilty.
17             THE COURT:  I do find that your guilty plea is
18   knowing, intelligent and voluntary and that there is a factual
19   basis for it.  I will recommend to Judge Gerrard that he accept
20   your plea of guilty.
21        I will also recommend that he accept your plea agreement.
22   He'll take up the issue of both your guilty plea and your plea
23   agreement at the time of sentencing.  We're looking at a
24   sentencing date currently of February 2nd at 10 a.m.
25        Does that work for everyone?
```

```
 1              MR. RUSSELL:  Yes, Your Honor.

 2              MR. VANDERSLICE:  Yes.

 3              THE COURT:  All right.  My understanding is that

 4    we're also taking up another minor issue for sentencing

 5    preparation; is that correct?

 6              MR. VANDERSLICE:  Yes, Judge.  And in that regard, I

 7    am requesting of the Court that a study be conducted by the

 8    Bureau of Prisons pursuant to 18, U.S.C., Section 3552, and

 9    it's -- it's part small b, closed paren -- small b, closed

10    paren.

11        And I -- and we had talked with you about that in chambers

12    prior to the start of this plea hearing.  And I'm unsure as to

13    whether you can order that study or whether it would be more

14    appropriate to have Judge Gerrard do so after he gets the

15    presentence report or even before.

16              THE COURT:  Okay.

17              MR. VANDERSLICE:  But we're requesting that study to

18    be conducted regarding Mr. Jacobsen.

19              THE COURT:  Just so that Judge Gerrard is aware, I --

20    I believe since none of us know if I can sign it or not, let's

21    just have him sign it, but let's cover why -- why you want it

22    right now so that he knows why he should sign it.

23              MR. VANDERSLICE:  Yes, Judge.

24        I think that because of the particular facts in this case,

25    I think it would -- and because we've got an 11(c)(1)(C) with a
```

1    fairly wide range of discretion between 25 and 35 years, I

2    think that if the BOP conducted this study, it would be very

3    helpful to Judge Gerrard in -- in making a decision related to

4    where within that spectrum he thinks Mr. Jacobsen should be

5    sentenced.

6            THE COURT:  All right.  Does the government object to

7    that request?

8            MR. RUSSELL:  The government does not, Your Honor.

9            THE COURT:  Okay.  Let me ask the defendant do you

10   understand that what that means is that you would be

11   transported out of this district, you would go into -- for this

12   evaluation?

13           THE DEFENDANT:  Yes, I understand.

14           THE COURT:  And do you understand that that will

15   delay -- likely delay your sentencing -- even though we're

16   setting it right now for February 2nd, it will likely delay

17   your sentencing beyond that?

18           THE DEFENDANT:  Yes, I do.

19           THE COURT:  And do you agree to that plan?

20           THE DEFENDANT:  Yes, I agree.

21           THE COURT:  All right.  Now, is there anything else

22   we can take up?

23           MR. RUSSELL:  No, Your Honor.

24           MR. VANDERSLICE:  No, Judge.

25           THE COURT:  We are in recess.

1          MR. VANDERSLICE:  Thank you.

2      (Recess taken at 11:39 a.m.)

3

4                    * * * * * * *

5

6      I, Rogene S. Schroder, certify that the foregoing is a

7  correct transcription to the best of my ability from the

8  digital recording of the proceedings held in the above-entitled

9  matter.

10      _/s/Rogene S. Schroder_              November 16, 2017
              Transcriber                       Date
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25